UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 11-22798-CIV-ALTONAGA/Simonton

**BRITTANY BURDEAUX**,

    Plaintiff,

vs.

**ROYAL CARIBBEAN CRUISES, LTD.**,

    Defendant.
_____/

## **ORDER**

**THIS CAUSE** came before the Court on Defendant, Royal Caribbean Cruises, Ltd.'s ("Royal Caribbean['s]") Motion for Summary Judgment . . . ("Motion") [ECF No. 61], filed on June 11, 2012. The Court has carefully considered the parties' written submissions, the record, and the applicable law.

### **I. BACKGROUND**[1]

Plaintiff, Brittany Burdeaux ("Burdeaux"), was a passenger onboard Royal Caribbean's vessel, the Oasis of the Seas, during the course of a cruise that began on August 21, 2010. (*See*

---

[1] Royal Caribbean's Motion is comprised of both its statement of undisputed facts and memorandum of law. (*See generally* Mot.). Plaintiff, Brittany Burdeaux, did not specifically contest any of the facts set forth by Royal Caribbean. (*See generally* Resp. [ECF No. 75]); S.D. FLA. L.R. 56.1(a). Accordingly, they are deemed admitted except for any statements unsupported by the record. *See id.* 56.1(b); *see also* FED. R. CIV. P. 56(e)(2). The Court also notes Burdeaux does not present any additional facts in the manner required by the Local Rules for this District. (*See generally* Resp. [ECF No. 75]); S.D. FLA. L.R. 56.1(a). Nonetheless, to the extent the parties discuss additional undisputed facts not previously included in Royal Caribbean's statement of facts, the Court will consider them.

When citing to the Motion, the Court refers to Royal Caribbean's statement of facts by paragraph number, and refers to Royal Caribbean's legal arguments by page number.

Mot. ¶ 1). When the Oasis of the Seas arrived in Cozumel, Mexico on August 26, 2010, Burdeaux disembarked, and after visiting the beach, took a taxi to a restaurant, and then went shopping alone. (*See id.* ¶¶ 2, 4).

From the restaurant, Burdeaux walked to the main strip of shops along one street in Cozumel, which was depicted on a map that Royal Caribbean provided to her before she disembarked. (*See id.* ¶¶ 3–4). Royal Caribbean derives revenue from passengers who purchase items in the stores listed on the map. (*See id.* ¶ 3 n.1). Certain recommended shops on the map also provide passengers with a sixty-day "Buyer's Guarantee" for repairs and returns of purchased merchandise. (*Id.* ¶ 3). The "guaranteed and recommended shops" were marked on the map with a number and corresponding description that detailed the name of the shop and the merchandise sold. (*Id.*). The map was created by a non-party. (*See id.*).

While shopping, Burdeaux attempted more than once to purchase illegal drugs, but was unsuccessful. (*See id.* ¶ 7). Following her attempts to purchase drugs, she stopped in a few stores on the main strip to shop for jewelry. (*See id.* ¶ 8). After walking a few blocks down the main strip to a store called "Viva Mexico," Burdeaux turned around and walked back in the direction from which she had come. (*See id.*). While walking back, Burdeaux came across a shopping cart that had jewelry. (*See id.* ¶ 9). Up until this time, Burdeaux had remained on the main strip depicted on the map and had not ventured down any side streets. (*See id.*). The jewelry cart was not identified on the map, nor did the map mention or recommend any jewelry carts. (*See id.*).

The man at the jewelry cart told her that he had other jewelry in his store. (*See id.* ¶ 11). Burdeaux then followed him down a side street — away from the main strip of shops — into an unnamed store. (*See id.*) The unnamed store was not specifically depicted on the subject map,

nor was it a "recommended and guaranteed" store. (*Id.* ¶ 12). However, Burdeaux was able to mark on the map the location of the store during deposition. (*See id.* ¶ 12 n.2 (citing Ex. D [ECF No. 61-4])).

While looking at jewelry in the unnamed store, the man Burdeaux had met at the jewelry cart pushed her down a hallway and into a restroom. (*See id.* ¶ 13). Thereafter, he forced her to perform oral sex on him. (*See id.*). Following this, Burdeaux was forced to have oral and vaginal sex with four additional unknown local men. (*See id.*). When the fifth man exited the restroom, the men let her go. (*See id.* ¶ 14).

Royal Caribbean's vessels have been visiting Cozumel for many years. (*See id.* ¶ 18). Typically, Royal Caribbean has one or more vessels visiting Cozumel per week. (*See id.*). All of Royal Caribbean's vessels have the capacity to carry at least 2,000 passengers and some of its vessels are able to carry more than 4,000 passengers. (*See id.*). Accordingly, prior to Burdeaux's assault, Royal Caribbean had taken millions of passengers to the port of Cozumel. (*See id.*). In the five years prior to Burdeaux's assault, there were no reported instances of sexual assault or violent crime involving Royal Caribbean passengers or crewmembers both in the shopping area depicted on the map and in Cozumel as a whole. (*See id.* ¶ 19).

To monitor security risks in places to which Royal Caribbean directs its passengers to in Cozumel, Royal Caribbean relies on 1) United States State Department travel warnings, 2) reports from it passengers, 3) reports from its crewmembers, 4) the local police, and 5) a Port Agent. (*See* Resp. 7 (citing Campos Depo. 46:12–17, 56:2–19 (deposition of Royal Caribbean's Rule 30(b)(6) representative) [ECF No. 74-1])). Two travel warnings issued by the State Department were in existence at the time of Burdeaux's assault, which refer to Cozumel, rape,

3

and sexual assault as a "serious problem[]" in resort areas. (*Id.* 8 (citing Ex. 7,[2] at 3 [ECF No. 75-7]; Ex. 11, at 9 [ECF No. 75-11])). Prior to Burdeaux's assault, Royal Caribbean was not aware of any State Department warnings in effect pertaining specifically to Cozumel. (*See* Mot. ¶ 20).

Following the assault, Burdeaux filed a Complaint against Royal Caribbean alleging, in part, that Royal Caribbean failed to warn "of the dangers of being sexually assaulted and/or [sic] in port in Cozumel, Mexico[,] . . . of dangers going ashore in Cozumel, Mexico without male escorts[,] . . . [and of] prior incidents of passengers claiming that they were sexually assaulted and/or raped in port." (Compl. ¶¶ 15(a), (e), (l) [ECF No. 1]). Burdeaux also alleges that Royal Caribbean failed to disclose "prior problems and/or prevalence of tourists and/or cruise passengers being sexually assaulted and/or [sic] in port in Cozumel, Mexico," failed to "adequately investigate and/or monitor businesses located in areas where Defendant recommended and/or suggested passengers could safely go," and failed to "conduct diligent inquiry as to safety of area and/or business recommended by Defendant to Plaintiff and other passengers." (*Id.* ¶¶ 15(b), (d), (f)).

## II. LEGAL STANDARD

Summary judgment shall be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(a), (c). "[T]he court must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)). "An issue of fact

---

[2] Burdeaux's Exhibit 7 appears to be the same State Department warning as Royal Caribbean's Exhibit I [ECF No. 61-9].

4

is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Burgos v. Chertoff*, 274 F. App'x 839, 841 (11th Cir. 2008) (quoting *Allen v. Tyson Foods Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (internal quotation marks omitted)). "A factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Channa Imps., Inc. v. Hybur, Ltd.*, No. 07-21516-CIV, 2008 WL 2914977, at *2 (S.D. Fla. Jul. 25, 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The movant's initial burden on a motion for summary judgment "consists of a responsibility to inform the court of the basis for its motion and to identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993) (internal quotation marks and alterations in original omitted) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "[T]he plain language of Rule 56 [] mandates the entry of summary judgment [] . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1292 (11th Cir. 2012) (quoting *Celotex*, 477 U.S. at 322).

### III. ANALYSIS

Royal Caribbean's request for summary judgment rests on its assertion that Burdeaux is unable to prove negligence for the following reasons: (1) Burdeaux's Complaint fails to state a cause of action under the law, (2) the facts do not support the existence of a duty owed to Burdeaux, and (3) Royal Caribbean is not liable for the unforeseeable criminal acts of a third party. (*See* Mot. 12–16). The Court examines each argument in turn.

### A. Failure to State a Cause of Action

Royal Caribbean contends that Burdeaux failed to "allege[] a duty existing under the law" (Mot. 13 (citation omitted)), because she did not allege that Royal Caribbean knew or should have known of the alleged dangers in the Cozumel. (*See id.* 12–13). This argument, however, should have been raised in a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), as it is not appropriately before the Court on this Motion for summary judgment given the applicable standard of review. *See, e.g.*, *Buben v. City of Lone Tree*, Civil Action No. 08–cv–00127–WYD–MEH, 2010 WL 3894185, at *3 (D. Colo. Sept. 30, 2010) (rejecting defendants' attempt to dismiss a claim as a matter of law based on the assertion that it was improperly pled, as the motion before the court was filed pursuant to Federal Rule of Civil Procedure 56). For these reasons, summary judgment based on this ground is denied.

### B. Existence of a Duty

A cruise line is not liable to passengers as an insurer; consequently,

> [T]he benchmark against which a shipowner's behavior must be measured is ordinary reasonable care under the circumstances, a standard which requires, as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of the risk-creating condition, at least where . . . the menace is one commonly encountered on land and not clearly linked to nautical adventure.

*Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1322 (11th Cir. 1989). The parties here agree that a cruise line's duty to its passengers "extends 'beyond the port' to 'place[s] where the passenger is invited to, or reasonably may be expected to visit." *Smolnikar v. Royal Caribbean Cruises Ltd.*, 787 F. Supp. 2d 1308, 1322 (S.D. Fla. 2011) (quoting *Carlisle v. Ulysses Line Ltd., S.A.*, 475 So. 2d 248, 251 (Fla. 3d DCA 1985)); (*see* Mot. 11; Resp. 5).[3] This duty includes the

---

[3] Nonetheless, Royal Caribbean also urges the Court to decline to adopt *Carlisle*'s holding that a cruise line's duty extends beyond the port of call because (1) it is not binding on this Court, and (2) it imposes "the highest duty of care that has been rejected by this Circuit." (Mot. 11 n.5 (citing *Keefe*, 867 F.2d at

duty to warn passengers of "dangers the cruise line knows or reasonably should have known." *Id.* at 1322 (citing *Carlisle*, 475 So.2d at 251; *Goldbach v. NCL (Bahamas) Ltd.*, Case No. 06–21248–Civ–Huck, 2006 WL 3780705, at *2 (S.D.Fla. Dec. 20, 2006)).[4]

According to Royal Caribbean, it is entitled to a summary judgment finding it had no duty to warn Burdeaux of the danger of sexual assaults in the Cozumel downtown shopping area because Plaintiff has adduced no evidence that Royal Caribbean "knew or should have known of the danger of sexual assaults in the shopping area in Cozumel where Plaintiff's . . . assault . . . occurred." (Mot. 14 (emphasis removed)). Royal Caribbean points out that to its knowledge, there were no alleged sexual assaults or violent crimes involving passengers in the relevant time period preceding Burdeaux's assault, and that it was likewise not "aware of any crime spree or increased number of sexual assaults in Cozumel." (Mot. 14–15 (internal quotation marks omitted)). Burdeaux does not contest these facts.

The parties dispute, however, whether the United States State Department warnings, which Royal Caribbean reviews, provided Royal Caribbean with notice of the potential danger in the Cozumel shopping district at issue. One State Department warning states:

> **Cancun, Playa del Carmen and Cozumel:** Cancun is a fairly large city, approaching 500,000 inhabitants, with increasing reports of crime. Crimes

---

1321–22)). Royal Caribbean fails to explain, however, why the standard elucidated in *Carlisle* and cited approvingly by several courts in this district, *see, e.g.*, *Smolnikar*, 787 F. Supp. 2d at 1322; *McLaren v. Celebrity Cruises, Inc.*, No. 11–23924–CIV, 2012 WL 1792632, at *8 (S.D. Fla. May 16, 2012); *Goldbach*, 2006 WL 3780705, at *2, amounts to an impermissible "highest" duty of care.

[4] Such a duty "encompasses only 'those dangers which are not apparent and obvious to the passenger.'" *Smolnikar*, 787 F. Supp. 2d at 1322–23 (quoting *Isbell v. Carnival Corp.*, 462 F. Supp. 2d 1232, 1237 (S.D. Fla. 2006)) (other citations omitted). *See also Luby v. Carnival Cruise Lines, Inc.*, 633 F. Supp. 40, 41 n.1 (S.D. Fla. 1986) ("While there is a duty of the carrier to warn the passenger of dangers, this obligation extends only to those dangers which are not apparent and obvious to the passenger." (citing *N.V. Stoomvaart Maatschappij 'Nederland' v. Throner*, 345 F.2d 472 (5th Cir. 1965))). The parties do not raise or discuss this requirement in their briefing.

> against the person, such as rape, commonly but not exclusively occur at night or in the early morning hours, and often involve alcohol and the nightclub environment. Therefore, it is important to travel in pairs or groups, be aware of surroundings, and take general precautions. . . . If you are a victim of a crime, immediately notify the U.S. Consular Agency in Cancun, Playa del Carmen or Cozumel or the U.S. Consulate in Merida at the telephone numbers provided below.

(Ex. I, at 3). Another warning states:

> **Crime in Cancun, Acapulco, and Other Resort Areas:** Rape and sexual assault continue to be serious problems in Cancun and other resort areas. Many of these occur at night or during the early morning hours, in hotel rooms, or on deserted beaches. Acquaintance rape is a serious problem. Hotel workers, taxi drivers, and security personnel have been implicated in many cases. . . .

(Ex. 11, at 9). Both warnings were in existence at the time of Burdeaux's assault.

According to Royal Caribbean, these warnings did not put it on particular notice regarding whether there was a problem with sexual assaults in Cozumel because although the first warning describes the problem of rape under the header "Cancun, Playa del Carmen and Cozumel," the first sentence of the description references only Cancun. Further, among other reasons, the warning focused on occurrences of rape occurring at night or in the early morning hours, often involving alcohol and the nightclub environment. Burdeaux's assault does not fall into these particular circumstances. (*See* Mot. 15).

Burdeaux states, however, that the header in the first warning is clear — it specifically states "Cozumel." She also notes that the warning is not limited to rapes that occur at night or those involving alcohol and the nightclub environment. The second warning addresses the "serious problem[]" of rape in "Cancun *and other resort areas*." (Resp. 8 (quoting Ex. 11, at 9 (emphasis added))). Taken together with the fact that Royal Caribbean reviews State Department warnings in considering whether notification of its passengers is necessary, and that Cozumel is a "resort area" (*id.* n.6), Burdeaux contends that Royal Caribbean "should have

8

known" of the increased risk of rape in Cozumel.

While there appears to be a disputed issue as to what notice, if any, the State Department warnings provided to Royal Caribbean, the requisite notice in this case must be specific to the danger, i.e., not only that there is a significant risk of rape or sexual assault in Cozumel, but that such risk exists in the shopping district depicted on the map provided to Burdeaux by Royal Caribbean. *See Carlisle*, 475 So. 2d at 251 ("[T]he duty to warn is limited to *dangers* known to exist in the *particular* place where the passenger is invited to, or reasonably may be expected to visit." (emphasis added)); *Koens v. Royal Caribbean Cruises, Ltd.*, 774 F. Supp. 2d 1215, 1219–20 (S.D. Fla. 2011) (dismissing claim because the complaint failed to allege that the defendant knew or should have known of dangerous conditions on either the tour at issue or the grounds where the tour took place, but rather merely alleged a rising crime rate in the port city (citing *Carlisle*, 475 So. 2d at 251)). Burdeaux has not identified any evidence that Royal Caribbean actually had this specific knowledge as to the shopping district, as opposed to Cozumel as a whole. (*See* Resp. 3 (stating there is "ample record evidence which goes to prove that [Royal Caribbean] either knew or should have known of a significant risk of rapes and/or sexual assaults in Cozumel")).

But the relevant inquiry does not end here. Royal Caribbean has the duty to warn its passengers of "dangers the cruise line . . . reasonably should have known." *Smolnikar*, 787 F. Supp. 2d at 1322 (citations omitted). Burdeaux asserts that because Royal Caribbean not only recommended the shops in the area depicted on the map, but also derived revenue from sales made to its passengers in such shops, Royal Caribbean had the duty to investigate or inspect the safety of the shopping area, especially given the State Department's warnings. Assuming this duty exists, Royal Caribbean's failure to inspect can implicate Royal Caribbean's duty to warn if

the results of a reasonable inspection would have put Royal Caribbean on notice that the Cozumel shopping district it directed its passengers to had a problem with sexual assaults.

The only evidence Burdeaux identifies that speaks directly to crime in the Cozumel shopping district at issue are the affidavits of Richard Alexander ("Alexander") (*see* Alexander Aff. [ECF No. 75-9]), a former Royal Caribbean employee, and Sherri Davis ("Davis") (*see* Davis Aff. [ECF No. 75-5]).[5]  Alexander states that he formerly worked onboard Royal Caribbean's ships, and from 2001 through 2011, he regularly visited Cozumel.  (*See* Alexander Aff. ¶¶ 2, 3).  With respect to the shopping district in downtown Cozumel, Alexander states:

> In my time visiting Cozumel, it was well known to myself and the other crewmembers that violent crimes occurred in the shopping district in downtown Cozumel.
>
> Specifically, it was well known to myself and other crewmembers that drugs were widely available for purchase in the tourist shopping district in downtown Cozumel.  These drug dealers specifically targeted cruise ship passengers.
>
> Along with drugs there was also a high rate of violence in downtown Cozumel, including in the shopping district.
>
> It was well known to crewmembers that we should not go ashore alone, especially the female crewmembers who always made sure to travel in groups.

(Alexander Aff. ¶¶ 5–8).  Not only are these statements conclusory and devoid of any factual support, they fail to demonstrate that the Cozumel shopping district at issue had a risk of sexual assaults.  Indeed, the "violent crimes" which Alexander identifies as having occurred in the shopping district were "specifically" related to drug sales, not to sexual assaults.  Further, Alexander's vague comment that there was a "high rate of violence," even when considered together with his statement that female crewmembers traveled in groups, is insufficient to create

---

[5] Burdeaux also identifies a report on crime statistics of various regions in Mexico.  (*See* [ECF No. 75-6]).  However, Burdeaux does not point to anything in the report that supports a problem with sexual assaults in Cozumel's downtown shopping district.

10

the inference that the "violence" that occurred in the shopping district necessarily includes sexual assault.

Davis, a former resident of Cozumel for over eighteen years (*see* Davis Aff. ¶¶ 2, 6), refers to Cozumel's shopping district only once in her affidavit: "Going back as early as 2007 articles had been printed in the local newspapers, including *Por Esto*, concerning multiple executions and the escalating drug violence in Cozumel in and around the downtown shopping district. These articles were publically available and disseminated both in print and on the internet." (*Id.* ¶ 9). Davis's statement goes to the issue of what kind of information Royal Caribbean would have been put on notice of[6] had it conducted a reasonable inspection of the Cozumel shopping district, including reading local Spanish newspapers. However, the articles referred to by Davis relate only to "drug violence," not sexual assaults. Davis also asserts she is familiar with people who have been victims of sexual assaults, or had read of them, but Davis indicates these crimes occurred only in Cozumel, not Cozumel's shopping district in particular. (*See id.* ¶¶ 14, 15).

"Permitting Plaintiff[] to proceed on [her] claim of negligence against Defendant solely because of a rising crime rate in [Cozumel] would improperly expand a cruise line's duties to its customers." *Koens*, 774 F. Supp. 2d at 1220. There has been no showing that Royal Caribbean knew or should have known of the dangers of sexual assaults in the Cozumel downtown shopping area. Absent actual or constructive knowledge of such danger, Royal Caribbean did not owe Burdeaux a duty to warn of any risk of sexual assaults in the Cozumel shopping district

---

[6] The unidentified newspaper articles would clearly be inadmissible if admitted to establish the truth of their contents. *See United States v. Baker*, 432 F.3d 1189, 1211–12 (11th Cir. 2005). They are alluded to by Davis to show Royal Caribbean was put on notice of their contents, not the truth of the matters reported.

depicted on the map it provided to her. Thus, summary judgment based on this ground is appropriate.

## C. Foreseeability

Royal Caribbean finally asserts that it "cannot be held liable in negligence for the intervening criminal acts of a third party unless said acts were foreseeable." (Mot. 15 (citations omitted)). The Court declines to address this argument given its finding that Royal Caribbean did not owe Burdeaux a duty to warn of any risk of sexual assaults in the Cozumel shopping district depicted on the map provided by Royal Caribbean. In any event, the Court observes that the issue of foreseeability hinges on evidence demonstrating whether there was a particular risk of sexual assault in the Cozumel shopping district at issue. As previously discussed, Burdeaux presents no record evidence of this risk.

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that the Motion **[ECF No. 61]** is **GRANTED**. Summary judgment in favor of Royal Caribbean will be entered by separate order.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 3rd day of August 2012.

_____<br>
**CECILIA M. ALTONAGA**<br>
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record